UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INDIA TUBBS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:20-CV-00695 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, | ) | Magistrate Judge Jeffrey Cummings |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

India Tubbs brings this employment discrimination suit against her employer, the Chicago Transit Authority (which is well known by its acronym, CTA). R. 22, Am. Compl. ¶¶ 3–4.[1] In the Amended Complaint, Tubbs alleges that she experienced harassment and discrimination based on her sex. The CTA moves to dismiss all claims. For the reasons set forth in this Opinion, the CTA's motion to dismiss is granted, though for now without prejudice. Tubbs may propose a second amended complaint.

## I. Background

For purposes of this motion, the Court accepts as true the factual allegations in the Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). On November 13, 2019, Tubbs was on duty working as a Bus Operator for CTA. Am. Compl. ¶ 7. During this work shift, she unexpectedly found herself alone with a male coworker inside of a CTA bus. Am. Compl. ¶ 11. The coworker made sexual comments to Tubbs

---

[1]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. § 1331.

and grabbed her below the waist within around two inches of her genitalia. *Id*. ¶¶ 8–9. Before this incident, Tubbs had no personal relationship with the male coworker. *Id*. ¶ 10. His actions were uninvited and unwelcome. *Id*.

That same day, in compliance with the CTA's complaint procedures, Tubbs complained in writing to her managers. Am. Compl. ¶ 14. Tubbs's written complaint "described the incident as a 'sexual assault,'" and identified the coworker by name. *Id*. ¶ 15. The complaint also included the time, date, and location of the misconduct. *Id*.

According to Tubbs, her managers "did not take [her complaint] seriously." Am. Compl. ¶ 16. This disregard happened even though the managers obtained a video recording of the incident and reviewed it themselves, confirming to them that the incident had occurred. *Id*. ¶¶ 17–18. The managers did not, however, initiate an investigation or notify the CTA's Equal Employment Opportunity Unit of the assault. *Id*. ¶ 18. Upon viewing the recorded incident, at least one of Tubbs's managers minimized the severity of it and joked about Tubbs's reaction to being grabbed "in an intimate area of her body by her male coworker." *Id*. The managers did not provide a written response to her complaint. *Id*. They also lied to Tubbs, assuring her that they would appropriately respond to the situation by following all necessary policies and by disciplining the male coworker. *Id*. ¶ 20. In reality, the managers did not discipline the coworker, nor did they attempt to isolate him to ensure Tubbs would not encounter him in the workplace again. *Id*. ¶¶ 19–20. Indeed, after Tubbs submitted her complaint to her managers, she often saw the coworker in the workplace. *Id*. ¶ 19.

Tubbs repeatedly followed up with her managers about the status of her complaint, and she alleges that "it became clear they were not going to do anything about her complaint." Am. Compl. ¶ 21. Tubbs feared that she would face retaliation from the coworker because of her managers' failure to respond to her complaint. *Id.* ¶¶ 22–23. In fact, Tubbs was approached by other coworkers who—although they should not have known about her complaint—criticized her for making the complaint and questioned the veracity of it. *Id.* ¶ 23. Because of the assault and the lack of response by her managers, Tubbs experienced severe emotional distress, including depression and anxiety attacks. *Id.* ¶ 24. This emotional distress interfered with Tubbs's work performance, and she eventually took around two months' leave from work after an evaluation by a mental health professional. *Id.* ¶ 25.

The CTA disciplined Tubbs for missing work and refused to compensate her for the wages that she lost as a result of missed work. Am. Compl. ¶ 25. In December 2019, Tubbs filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Am. Compl. ¶ 27. After exhausting administrative remedies, *Id.* ¶ 3, she filed this lawsuit, R. 1, Compl., and eventually filed the Amended Complaint, which is now the operative pleading targeted by the CTA's dismissal motion.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

### A. Title VII

Although the Amended Complaint labels the claims under one "Count I" heading, the pleading does set forth two distinct claims—one for sexual harassment and the other for sex discrimination. Am. Compl. ¶ 37. Tubbs alleges that she was subjected to harassment by her coworkers and supervisors, and also that she was discriminated against on the basis of her sex. *Id.* ¶¶ 31–37. The CTA moves to dismiss

these claims. R. 24, Def.'s Mot. Dismiss at 1. The Court addresses the Defendant's arguments in turn.

### 1. Harassment

First, in targeting the harassment claim, the CTA argues that Tubbs has not adequately pled the severity and pervasiveness required for a hostile work environment claim. Def.'s Mot. Dismiss at 6–8. To adequately state a Title VII hostile work environment claim, a plaintiff must allege that (1) she was subjected to unwelcome conduct; (2) the conduct was based on membership in a protected class; (3) the conduct was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) that there is a basis for employer liability. *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018). The CTA takes issue with the third element, namely, that Tubbs's allegations of sexual harassment are vague and insufficient given that the coworker's physical assault of Tubbs was an isolated incident. Def.'s Mot. Dismiss at 6–7. But the third element "is in the disjunctive—the conduct must be *either* severe *or* pervasive." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011) (emphasis in original). As Tubbs correctly argues, "harassment need not be both severe and pervasive—one extremely serious act of harassment could rise to an actionable level as could a series of less severe acts." *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001). So a one-time instance of harassment indeed may satisfy the severe-*or*-pervasive requirement. Here, Tubbs's allegations of the physical assault by the coworker satisfy, at the pleading stage, the requirement that the harassment be sufficiently severe.

5

But the CTA identifies another problem with the harassment claim: Tubbs has not adequately pled facts that would establish *employer* liability for the assault by the *coworker*. To plead an actionable harassment claim against the CTA, Tubbs is required to allege a basis for employer liability, because the assault was perpetrated by a coworker, not a supervisor. *See Vance*, 646 F.3d at 469 (explaining that the "question whether there is a basis for employer liability depends on whether the alleged harassment was perpetrated by supervisors or coworkers."). Employers are "strictly liable" for harassment inflicted by supervisors, but if the purported harasser was merely a coworker, then the plaintiff must adequately allege that the employer has "been negligent either in discovering or remedying the harassment." *Id*. at 469–70.

Here, the Amended Complaint does not do that. It is true that, generally speaking, in "Title VII cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (explaining that "[e]mployers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims."). But here the current allegations do not, as a matter of law, set forth a valid basis to hold the CTA liable for the coworkers' harassment. That is because the allegations do not address what the CTA did (or failed to do) *before* the alleged harassment happened. And, going forward in time *after* the incident, the allegations do not spell out with concrete facts what harassment Tubbs suffered after the managers bungled the response.

Given that leave to amend should be granted freely when justice requires, Fed. R. Civ. P. 15(a)(2), the Court will give Tubbs one more chance to amend the complaint. She might be able to fix the harassment claim in a few ways. For one, if the facts allow, Tubbs might allege, with concrete facts, that her managers were on notice of a potential sexual assault *before* it happened.

More likely is a fix to the allegations about the work environment *after* the managers received her complaint—and disclosed it to her coworkers (at least that is the plausible inference). If the coworkers' mistreatment of Tubbs *after* the making of the complaint was sufficiently severe or pervasive, then their post-complaint misconduct could qualify as a hostile work environment, independent of the assault committed by the male coworker. The current allegations, Am. Compl. ¶¶ 22–23, however, are too thin. In assessing whether misconduct is sufficiently severe or pervasive, courts look to factors like the severity of the conduct, "its frequency, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with the employee's work performance." *Passananti v. Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012). Tubbs will need to plead *facts* (not just conclusions) about what the coworkers did to her after the disclosure of the complaint, as well as (if the facts allow) what happened during the encounters with the original assailant after the managers failed to isolate him from Tubbs. And then, going beyond severity or pervasiveness of the post-complaint misconduct, Tubbs must also allege a basis for employer liability. It might very well be sufficient to allege that the managers *caused* the post-complaint misconduct by disclosing it to coworkers and disparaging the

complaint to them (again, the reaction of the coworkers gives rise to a reasonable inference that the managers denigrated Tubbs's complaint when disclosing it to her coworkers).

In sum, the Amended Complaint does not adequately state a hostile work environment claim, so the claim is dismissed, but without prejudice for now.

## 2. Discrimination

Next, the CTA argues that the sex discrimination claim should be dismissed because Tubbs has not alleged facts amounting to an adverse employment action. Def.'s Mot. Dismiss at 3–4. The Court agrees that, as currently pled, there is no qualifying adverse employment action in the Amended Complaint. To survive a motion to dismiss in a sex discrimination case, a plaintiff need only allege that "the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Carlson*, 758 F.3d at 827; *see also Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2011); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). To be actionable, an "adverse employment action must materially alter the terms and conditions of employment." *Stutler v. Illinois Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001); *see also Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012). An adverse action must be "more than a mere inconvenience or an alteration of job responsibilities." *de la Rama v. Illinois Dep't of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008) (cleaned up).[2]

_____

[2]CTA also argues that Tubbs has waived any argument against dismissing the sex discrimination claim because she fails to address how the CTA's conduct is connected to her sex. R. 28, Def.'s Reply at 4. Because the two possible adverse employment actions that Tubbs alleges—the managers' failure to meaningfully respond to the complaint and her two-month

Common examples of adverse employment actions are "economic injuries such as dismissal, suspension, failure to promote, or diminution in pay." *Markel v. Bd. of Regents of Univ. of Wisconsin Sys.*, 276 F.3d 906, 911 (7th Cir. 2002); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998) ("A tangible employment action in most cases inflicts direct economic harm."). Adverse employment actions may include "cases of harassment—mistreatment of an employee by coworkers or supervisors that is sufficiently severe to worsen substantially his conditions of employment" as perceived by a reasonable person. *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002). Also, a constructive discharge constitutes an adverse employment action. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (citing *Pa. State Police v. Suders,* 542 U.S. 129, 147 (2004)). As the Seventh Circuit has explained, "constructive discharge occurs when an employer makes an employee's working conditions so intolerable that an employee is forced into involuntarily resignation." *Roby v. CWI, Inc.*, 579 F.3d 779, 785 (7th Cir. 2009).

Tubbs has pled two related actions that might reasonably be characterized as candidates for the requisite tangible employment action: (1) the managers' failure to meaningfully respond to her complaint or investigate it; and (2) her two-month unpaid leave. Am. Compl. ¶¶ 18–21, 25. To buttress her claim of the managers' ineffectual investigation, Tubbs first alleges that they failed to notify the CTA's Equal Employment Opportunity Unit of the assault, despite having reviewed the video recording and assuring her that they would properly respond to her complaint. *Id.* ¶ 18.

---

unpaid leave—arise from the sexual assault by her coworker, that is sufficient to link Tubbs's discrimination claim to her sex at the pleading stage.

9

Second, Tubbs alleges that the managers failed to isolate the coworker who assaulted her and, as a result, she repeatedly saw him in the workplace. *Id.* ¶ 19. Third, she alleges her managers leaked the complaint to her coworkers, who then criticized her and questioned the veracity of her complaint. *Id.* ¶ 23. As a result of the emotional distress that Tubbs experienced from the failure to investigate and the coworkers' harassment after the managers disclosed the complaint, Tubbs alleges that she was forced to take a two-month leave from work. *Id.* ¶ 25.

Although the alleged failure of managers to meaningfully respond to the complaint is troubling, this failure in and of itself does not rise to the level of an adverse employment action. The Seventh Circuit has not addressed whether an employer's failure to investigate constitutes, by itself, an adverse action for a Title VII discrimination claim. But two other circuits have (albeit in the context of retaliation claims, for which there is a lower bar), and they held that an employer's failure to investigate a complaint does not constitute an adverse action. These courts reason that "a failure to investigate a complaint, unless it leads to demonstrable harm, leaves an employee no worse off than before the complaint was filed." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640 (10th Cir. 2012); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). Whether that is a correct legal principle in the abstract need not be decided right now, because Tubbs has not adequately alleged that the CTA's failure to investigate the complaint materially changed the terms and conditions of her employment. *Stutler*, 263 F.3d at 703. In a second amended complaint (if she files one), Tubbs should plead concrete facts about how the managers'

10

failure to investigate and the leaking of her complaint led to mistreatment by coworkers (and, if applicable, by managers) that was "sufficiently severe to worsen substantially [her] conditions of employment." *Herrnreiter*, 315 F.3d at 745.

On whether the two-month leave qualifies as an adverse employment action, Tubbs has not alleged sufficient facts to make the leave material. *See Stutler*, 263 F.3d at 703. In constructive discharge cases, the employee must allege "a more egregious situation than a hostile work environment because an employee is normally expected to continue working while seeking redress." *Roby*, 579 F.3d at 785; *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007). In short, the employee must allege that "her working conditions were so objectively intolerable that they forced a change in employment status." *Costco Wholesale Corp.*, 903 F.3d at 629. Because Tubbs has not sufficiently pled a hostile work environment (as discussed earlier), she by definition has not met the higher standard for constructive discharge. Again, the dismissal of this claim is without prejudice to filing a second amended complaint.

## IV. Conclusion

The CTA's motion to dismiss the claims for hostile work environment and for sex discrimination is granted. But Tubbs may file a second amended complaint by April 16, 2021. If she does not, then the dismissal will automatically convert into a dismissal with prejudice. If she does, then the answer (or Rule 12 motion) is due by

11

May 7, 2021. The tracking status hearing of April 9, 2021, is reset to April 23, 2021,

at 8:30 a.m., but to track the case only (no appearance is required).

ENTERED:


　　　　　s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 29, 2021