UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INDIA TUBBS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:20-CV-00695 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, | ) | Magistrate Judge Jeffrey Cummings |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

India Tubbs brings this employment discrimination suit against her employer, the Chicago Transit Authority (which is well known by its acronym, CTA). R. 33, Second Am. Compl. ¶¶ 3–4.[1] Earlier in the case, the Court dismissed the claims in the First Amended Complaint, but granted Tubbs leave to file a Second Amended Complaint. R. 32, Mem. Op. at 11. Tubbs did so, again alleging harassment and discrimination based on her sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. Second Am. Compl. ¶ 1.

The CTA has filed another motion to dismiss, arguing that the Second Amended Complaint fails to adequately state a claim. Fed. R. Civ. P. 12(b)(6). R. 35, Def.'s Mot. Dismiss; R. 36, Def.'s Br. For the reasons set forth in this Opinion, this time around the motion to dismiss is denied.

---

[1]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. § 1331.

## I. Background

For purposes of this motion, the Court accepts as true the factual allegations in the Second Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), as well as those in Tubbs's response brief (but only to the extent they are consistent with the Second Amended Complaint), *see Heng v. Heavner, Beyers & Mihlar*, LLC, 849 F.3d 348, 354 (7th Cir. 2017). In September 2019, Tubbs was on duty working as a Bus Operator for CTA. Second Am. Compl. ¶ 7. During this work shift, a male coworker grabbed Tubbs by her arm, pulled her body closer to his, and made comments verbally expressing his sexual and romantic interest in Tubbs. *Id.* Before this incident, Tubbs had no personal relationship with the male coworker. *Id.* ¶ 8. His actions were uninvited and unwelcome. *Id.*

Tubbs "immediately objected to this treatment and made it clear to the coworker that she had no interest in" him. Second Am. Compl. ¶ 7. She also complained immediately to a male manager who had witnessed the incident. *Id.* This manager received the complaint but did not document the complaint, investigate the incident, or otherwise report it to the CTA's Equal Employment Opportunity Unit. *Id.* ¶ 9. The manager did not discipline or reprimand the male coworker. *Id.*

On November 13, 2019, Tubbs was again on duty working as a Bus Operator for CTA. Second Am. Compl. ¶ 12. During this work shift, she unexpectedly found herself alone, inside of a CTA bus, with the same male coworker from the September incident. *Id.* ¶ 16. The male coworker made sexual comments to Tubbs and grabbed

her below the waist within around two inches of her genitalia. *Id.* ¶¶ 13–14. The verbal comments and physical contact were again uninvited and unwelcome. *Id.* ¶ 15.

That same day, Tubbs complained in writing to her managers. Second Am. Compl. ¶ 18. According to a brochure disseminated to employees by the CTA titled "Complaint Procedures," raising the issue with a manager or the EEO Unit is proper procedure:

> Any employee who believes he or she has been bullied, harassed, discriminated, or retaliated against in violation of CTA's AP 1601 should immediately report his or her concerns to a manager and/or contact the CTA's EEO Unit. The Complainant will be notified, in writing, within 5 business days if their complaint/allegations fall within EEO's scope of investigation as outlined in AP 1601.

R. 38-1, Pl.'s Resp. Exh. A. Tubbs's written complaint "described the incident as a 'sexual assault,'" and identified the coworker by name. Second Am. Compl. ¶ 19. The complaint also included the time, date, and location of the November incident. *Id.*

One of the managers who received the November complaint was the same male manager who had witnessed the September incident and who had received Tubbs's complaint about that incident. Second Am. Compl. ¶ 20. Upon receiving the complaint regarding the November incident, this male manager "indicated that he did not want to be involved" and did nothing to respond to the complaint. *Id.* A second manager who was aware of the November complaint admitted to Tubbs that they were "not surprised," based on this manager's own knowledge of the coworker's pattern of behavior. *Id.* ¶ 21.

According to Tubbs, her managers "did not take [her complaint] seriously." Second Am. Compl. ¶ 20. This disregard happened even though the managers

obtained a video recording of the incident and reviewed it themselves, confirming to them that the incident had occurred. *Id*. ¶¶ 22–23. Upon viewing the recorded incident, at least one of Tubbs's managers minimized the severity of it and joked about Tubbs's reaction to being grabbed "in an intimate area of her body by her male coworker." *Id*. ¶ 23. The managers did not provide a written response to her complaint, nor did they initiate an investigation or notify the CTA's Equal Employment Opportunity Unit of the assault. *Id*. They also lied to Tubbs, assuring her that they would appropriately respond to the situation by following all necessary policies and by disciplining the male coworker. *Id*. ¶ 25. In reality, the managers did not discipline the coworker, nor did they attempt to isolate him to ensure Tubbs would not encounter him in the workplace again. *Id*. ¶ 24. Indeed, after Tubbs submitted her written complaint about the November incident to her managers, she often saw the coworker in the workplace. *Id*.

Tubbs repeatedly followed up with her managers about the status of her complaint, and she alleges that "it became clear they were not going to do anything about her complaint." Second Am. Compl. ¶ 26. Tubbs feared that she would face retaliation from the coworker because of her managers' failure to respond to her complaint. *Id*. ¶ 28. In fact, Tubbs was approached by other coworkers who—although they should not have known about her complaint—approached her on a nearly daily basis to make comments about the incident and complaint. *Id*. One male coworker approached Tubbs and accused her of actually wanting the sexual assault to happen. *Id*. Another coworker approached her to question the veracity of the complaint and criticize her

4

for making it. *Id.* Even worse, Tubbs's coworkers began circulating a photograph of her without her consent and commenting on it in the workplace. *Id.* The commentary and dissemination of the photograph started after Tubbs made her complaint to her managers, despite the fact that she originally shared the photo before any of the incidents alleged in her complaint occurred. *Id.*

Because of the assault, the lack of response by her managers, and the additional harassment by coworkers after her complaint, Tubbs feared for her safety in the workplace and experienced severe emotional distress, including depression and anxiety attacks. Second Am. Compl. ¶ 29. Indeed, on November 26, 2019, Tubbs sought and received a "mental capacities evaluation" from a clinical psychologist, who concluded that as a result of her severe stress Tubbs was temporarily not fit to return to work with the CTA. *Id.* ¶ 30. Following the findings of this evaluation, Tubbs took around two months' leave from work. *Id.* ¶ 31. The CTA disciplined Tubbs for missing work by issuing her a written warning, and refused to compensate her for the wages that she lost as a result of missed work. *Id.*

In December 2019, Tubbs filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Second Am. Compl. ¶ 33. After exhausting administrative remedies, *id.* ¶ 3, she filed this lawsuit, R. 1, Compl., and eventually filed a First Amended Complaint. R. 22, Am. Compl. The Court dismissed the First Amended Complaint, but granted Tubbs leave to file a Second Amended complaint. Mem. Op. at 11. In response to Tubbs's Second Amended Complaint, the CTA filed another motion to dismiss. R. 35, Def.'s Mot. Dismiss at 1.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

[2] This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

The Second Amended Complaint labels the claims under one "Count I" heading, but the pleading again sets forth two distinct claims—one for sexual harassment and the other for sex discrimination. Second Am. Compl. ¶ 41. Tubbs alleges that she was subjected to harassment by her coworkers and supervisors, and also that she was discriminated against on the basis of her sex. *Id.* ¶¶ 36–41. The CTA moves to dismiss these claims. Def.'s Mot. Dismiss at 1. The Court addresses the CTA's arguments in turn.

### A. Harassment

First, in targeting the harassment claim, the CTA argues that Tubbs has not adequately pleaded a basis for employer liability. Def.'s Br. at 4. To adequately state a Title VII hostile work environment claim, a plaintiff must allege that (1) she was subjected to unwelcome conduct; (2) the conduct was based on membership in a protected class; (3) the conduct was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) that there is a basis for employer liability. *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018). This time around, the CTA's argument is rejected, because the Second Amended Complaint adequately alleges two plausible bases for employer liability. By adding facts about the September 2019 incident, Tubbs has pleaded that the CTA was on notice of a potential sexual assault *before* the November incident. Second Am. Compl. ¶ 7. What's more, Tubbs has pleaded additional facts amounting to severe and pervasive mistreatment by coworkers *after* she made a formal complaint about the

November incident. Critically, the facts also allege that her managers caused this mistreatment. All this is explained in detail next.

### 1. September and November Incidents

Tubbs was subjected to unwelcome conduct, which was based on her sex, during the November incident in which a coworker grabbed an intimate part of her body and made sexual comments to her. Second Am. Compl. ¶ 14. The first and second elements for a Title VII hostile work environment claim based on this incident are thus readily satisfied at this pleading stage. *EEOC v. Costco*, 903 F.3d at 625. It is further undisputed that "Tubbs's allegations of the physical assault by the coworker satisfy, at the pleading stage, the requirement that the harassment be sufficiently severe." Mem. Op. and Order at 5. The third element is thus also met. *EEOC v. Costco*, 903 F.3d at 625.

The CTA takes issue with the fourth element, namely, that Tubbs's allegations about the November incident fail to establish a basis for employer liability. To plead an actionable harassment claim against the CTA based on the November incident, Tubbs is required to allege a basis for employer liability, because the assault was perpetrated by a *coworker*, not a supervisor. *See Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011). Employers are "strictly liable" for harassment inflicted by supervisors, but if the purported harasser was merely a coworker, then the plaintiff must adequately allege that the employer has "been negligent either in discovering or remedying the harassment." *Id*. at 469–70. An employer "will not be liable for the hostile work environment absent proof that it failed to take appropriate remedial

measures *once apprised of the harassment*." *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 478 (7th Cir. 2004) (emphasis in original) (cleaned up). Typically, "the law does not consider an employer to be apprised of the harassment 'unless the employee makes a concerted effort to inform the employer that a problem exists.'" *Id.* (citing *Silk v. City of Chicago*, 194 F.3d 788, 807 (7th Cir. 1999)). Alternatively, an employer can be charged with constructive notice where the harassment was sufficiently obvious. *Hrobowski*, 358 F.3d at 478.

Here, the CTA solely focuses on whether Tubbs must plead that she made a "concerted effort" to inform her employer of the harassment. Def.'s Br. at 5. But that sole focus ignores the other avenue: that her employer could have had constructive notice of the harassment, absent any evidence of a so-called "concerted effort" by Tubbs. *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 931 (7th Cir. 2019) (denying employer's motion for summary judgment and finding that employer could be liable absent a "concerted effort" by the employee to inform the employer that a problem existed, if the employer "knew or should have known of the harassing conduct yet failed to act.").

On top of that, Tubbs's response correctly points out that the cases cited by the defense for the "concerted effort" standard all apply that standard at the summary judgment phase, rather than at the earlier pleading stage at stake here. R. 38, Pl.'s Resp. at 8. At the pleading stage, the plaintiff need only allege facts sufficient to support a plausible inference that her employer had actual *or* constructive notice of a potential sexual assault *before* it happened and yet failed to act.

The operative pleading does just that. In the Second Amended Complaint, Tubbs alleges that, in advance of November 2019, Tubbs's employer had both constructive and actual notice of a potential sexual assault. As discussed earlier, Tubbs alleges that, in September 2019, a manager personally witnessed a male coworker forcibly grab her arm while at work and pull her body towards his, and that she immediately complained about this conduct to that manager. Second Am. Compl. ¶ 7. The CTA contends that this conduct was not "sufficiently obvious harassment" to conclude that the manager had constructive notice. Def.'s Br. at 7. The CTA's argument ignores that the manager not only *saw* the coworker physically grab Tubbs, but Tubbs specifically complained about this conduct to the manager immediately afterwards. Second Am. Compl. ¶ 7. This allegation is sufficient to establish that the manager had notice that the male coworker had physically grabbed Tubbs and made comments to her, and that this conduct was unwelcome and offensive to Tubbs.

The CTA also contends that Tubbs has not alleged facts establishing that this manager was at the level of management required to show that CTA had notice of the September incident. Def.'s Br. at 6. In *Young v. Bayer Corporation*, the Seventh Circuit addressed the question of which employees must be notified of harassment for the employer to be held liable:

> the information must either (1) come to the attention of someone who (a) has under the terms of his employment, or (b) is reasonably believed to have, or (c) is reasonably charged by law with having, a duty to pass on the information to someone within the company who has the power to do something about it.

123 F.3d 672, 674 (7th Cir. 1997). The opinion further clarified that many companies appoint a "point person" to hear sexual harassment complaints, but that "if the

company fails to establish a clearly marked, accessible, and adequate channel for complaints, judicial inquiry will have to turn to who in the company the complainant *reasonably believed* was authorized to receive and forward (or respond to) a complaint of harassment." *Id.* (emphasis in original).

In her Second Amended Complaint and Response, Tubbs provides additional detail on the CTA's complaint procedures by including Exhibit A, a brochure given to CTA employees with a section titled "Complaint Procedure." R. 38-1, Pl.'s Resp. Exh. A. The section does identify the propriety of complaining to "a manager":

> Any employee who believes he or she has been bullied, harassed, discriminated, or retaliated against in violation of CTA's AP 1601 should immediately report his or her concerns to *a manager* and/or contact the CTA's EEO Unit. The Complainant will be notified, in writing, within 5 business days if their complaint/allegations fall within EEO's scope of investigation as outlined in AP 1601.

*Id.* (emphasis added). This brochure establishes that the CTA gives employees a choice between reporting harassment to a "manager" *or* contacting the CTA's EEO Unit. The brochure also implies that all complaints will be reviewed, within 5 days, by someone with the ability to determine whether they fall within EEO's scope of investigation. Based on the policy promulgated by CTA, it was reasonable for Tubbs to believe that *all* managers within CTA were "authorized to receive and forward (or respond to) a complaint of harassment." *Young*, 123 F.3d at 674. And it is not as if the manager (so far as the operative pleading says) told Tubbs that he was not the right person to complaint to. It is thus sufficient at the pleading stage that the Second Amended Complaint alleges that the CTA employee who witnessed the September

11

incident and received Tubbs's complaint about that incident was a "manager." Second Am. Compl. ¶ 7.

What's more, the Second Amended Complaint adds another key factual allegation: when Tubbs complained to management about the November incident, alleging that this coworker had sexually assaulted her, a *second* manager responded that they were "not surprised" by that type of complaint about the male coworker. Second Am. Compl. ¶ 21. This fact gives rise to the plausible inference that at least two management-level CTA employees had notice, before the November incident, that this coworker was a danger to women or to Tubbs specifically. The claim for sexual harassment based on the November incident survives the pleading stage.

### 2. Post-complaint Harassment by Coworkers

In addition to potential CTA liability (based on the pleadings) for the November incident, the Second Amended Complaint also sufficiently alleges that Tubbs was subjected to a hostile work environment *after* complaining in writing to her managers on November 13, 2019. To prevail on this issue, Tubbs was required to plead both that the conduct she suffered following the November 13 complaint was sufficiently "severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment," as well as plead facts establishing a basis for employer liability. *EEOC v. Costco*, 903 F.3d at 625.

Tubbs has adequately alleged both elements here. Turning first to whether the harassment was severe or pervasive, Tubbs has added concrete facts to her complaint. In assessing whether misconduct is sufficiently severe or pervasive to constitute a

hostile work environment, this Court looks to factors "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Passananti v. Cook Cty.*, 689 F.3d 655, 667 (7th Cir. 2012). The effect on the "employee's psychological well-being" is also relevant to this inquiry. *Id.*

In the First Amended Complaint, Tubbs alleged only that "she was approached by other co-workers, who should not have had any knowledge of her complaint, who questioned the veracity of her complaint and criticized her for making a complaint." Am. Compl. ¶ 23. Although the allegation that CTA managers leaked her complaint is troubling, it did not adequately allege that she was subjected to severe or pervasive harassment as a result of the leaked complaint. The Second Amended Complaint, however, does allege concrete facts on the frequency and severity of the comments by her coworkers. First, Tubbs alleges that she faced comments about the incident and her complaint "on a nearly daily basis." Second Am. Compl. ¶ 28. One such comment went so far as to "accuse[] Tubbs of actually wanting the sexual assault to happen." *Id.* This comment goes beyond a "mere offensive utterance," *Passananti,* 689 F.3d at 667, as it is plausible that a survivor of sexual assault could interpret a comment from a male coworker blaming her for the assault and accusing her of wanting sexual assault to happen as "physically threatening" or at the very least, "humiliating." *Id.*

Tubbs also alleges another specific incident in which a separate coworker "questioned the veracity of her complaint and criticized her for making [it]." Second Am. Compl. ¶ 28. Although the First Amended Complaint contained similar

13

language, First Am. Compl. ¶ 23, the new complaint concretely alleges that these types of comments occurred nearly daily and were made by multiple distinct coworkers. It is plausible that enduring victim-blaming and declarations of disbelief, as well as questions from multiple coworkers on a nearly daily basis, created a hostile work environment for Tubbs after the sexual assault. Also, despite her formal complaint alleging sexual assault, Tubbs repeatedly saw in the workplace the coworker who had assaulted her, Second Am. Compl. ¶ 24, further contributing to a hostile work environment.

Because Tubbs plausibly alleges that her coworkers "should not have had any knowledge of the incident or her complaint," Second Am. Compl. ¶ 28, the comments of Tubbs's coworkers reflecting that they knew about both the November incident and her complaint give rise to a reasonable inference that the managers told her coworkers about the complaint. All in all, Tubbs has pleaded facts sufficient to establish not only severe and pervasive mistreatment by coworkers, but to establish that this mistreatment was caused by management leaking her complaint and failing to discipline or isolate her alleged assailant. Because employers are "strictly liable for harassment inflicted by supervisors," *Vance*, 646 F.3d at 469, these facts sufficiently provide a basis for employer liability at the pleading stage.

Tubbs further alleges that a photograph of her was circulated in her workplace without her consent, and that the circulation of this photograph was caused by management's failure to appropriately respond to her November complaint. Second Am. Compl. ¶ 28. Without knowing the general nature of the photograph at issue, it is

14

difficult to conclude if its circulation was based on Tubbs's sex or was severe and pervasive mistreatment that added to her hostile work environment. Yet even without the allegations about the photograph, the allegations about the comments made by her coworkers in response to the leaked complaint are sufficient to establish a claim for hostile work environment.

## B. Discrimination

Next, the CTA argues that the sex discrimination claim should be dismissed because Tubbs has not alleged facts amounting to an adverse employment action. Def.'s Br. at 3–4. To survive a motion to dismiss in a sex discrimination case, a plaintiff need only allege that "the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Carlson*, 758 F.3d at 827; *see also Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2011); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). To be actionable, an "adverse employment action must materially alter the terms and conditions of employment." *Stutler v. Illinois Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001); *see also Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012). An adverse action must be "more than a mere inconvenience or an alteration of job responsibilities." *de la Rama v. Illinois Dep't of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008) (cleaned up). The Seventh Circuit has held that examples of adverse employment actions include both a hostile work environment and constructive discharge. *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011) ("Adverse employment actions for purposes of the federal antidiscrimination statutes generally fall into three categories: (1) termination or reduction

15

in … financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) *unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge*.") (emphasis added).

Tubbs has pleaded two related actions that might reasonably be characterized as candidates for the requisite tangible employment action: (1) the hostile work environment created by the managers' leaking of her complaint and failure to meaningfully respond to her complaint or investigate it; and (2) her two-month unpaid leave. To the extent that the First Amended Complaint alleged a separate sex discrimination claim based on hostile work environment, there is now complete overlap between that claim and the sexual harassment claim for hostile work environment following the November complaint. The discrimination claim based on a hostile work environment is thus subsumed by the harassment claim.

It is still possible that Tubbs's allegations on her two-month unpaid leave would amount to a constructive discharge, thereby constituting an independent adverse employment action sufficient to support a finding of sex discrimination under Title VII. As the Seventh Circuit has explained, "constructive discharge occurs when an employer makes an employee's working conditions so intolerable that an employee is forced into involuntarily resignation." *Roby v. CWI, Inc.*, 579 F.3d 779, 785 (7th Cir. 2009). The allegations must establish "a more egregious situation than a hostile work environment because an employee is normally expected to continue working while seeking redress." *Id*. In short, the employee must allege that "her working conditions

16

were so objectively intolerable that they forced a change in employment status." *EEOC v. Costco*, 903 F.3d at 629.

The Second Amended Complaint alleges that Tubbs took an approximately two-month leave from the CTA following a "mental capacities evaluation" from a clinical psychologist who concluded that, as a result of her severe stress, Tubbs was "temporarily not fit to return to work with the CTA." Second Am. Compl. ¶ 30. It is plausible that a reasonable person who received that type of an evaluation from a mental-health professional would reasonably not feel able to return to work, thereby "forc[ing] a change in employment status." *EEOC v. Costco*, 903 F.3d at 629. Tubbs's constructive discharge claim thus survives the pleading stage.

## IV. Conclusion

The CTA's motion to dismiss the claims for sexual harassment and sex discrimination under Title VII is denied. The parties shall confer on a proposed discovery schedule and file a status report with the proposal by April 8, 2022. The Court will review it in advance of the April 15, 2022 tracking status hearing, and will set the schedule going forward.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2022